WILLIAMS, Administratrix, Appellant, vs. DULUTH STREET
RAILWAY COMPANY, Respondent.

*April 4—April 29, 1919.*

*Street railways: Injuries on track: Negligence: Contributory negli-
gence: Omission to promulgate rules for management of cars:
Negligence of motorman: Emergency: Opinion evidence:
Failure to strike out: Witnesses: Reference to memorandum:
Production: Appeal: Harmless error: Remarks by court: Re-
quest for instruction already given: Curative instruction.*

1. In an action against a street railway company for negligently
   causing the death of a pedestrian while crossing its tracks, the
   evidence is *held* to sustain findings that the motorman was not
   guilty of negligence in the operation of the car which struck
   decedent and that decedent was negligent.
2. Evidence that the street-car conductor, a few minutes after the
   collision, stated that, since everything needful had been done
   for the injured pedestrian, in order to keep the car on time
   those wishing to go to destination might start, was properly
   excluded as not tending to show that the car was running at a
   high rate of speed.
3. The opinion of a witness, given while testifying as to the speed
   of the car, that the motorman used very good judgment, is *held*
   improper.
4. Where, on motion to strike such testimony and admonish the
   witness, the court told him to give facts and not conclusions
   but did not direct the striking of the objectionable testimony,
   the omission was not prejudicial error.
5. Mere reference by defendant's counsel to a memorandum of a
   witness's statement after the accident did not require its pro-
   duction, where the witness did not use it to enable him to
   testify.
6. Omission of the company to promulgate rules for the manage-
   ment of its cars in snowy weather had no bearing on the legal
   responsibility for its alleged negligence through its motorman
   in killing a pedestrian on its tracks in a snowstorm.
7. A street-car motorman, observing a pedestrian in danger, must
   use all reasonable care to avoid striking him; but if a sudden
   emergency arises without his negligence and there are differ-
   ent ways to avoid collision, he is not negligent because he fails
   to select the best course.

8. Any misleading tendency of the court's remarks, in presence of the jury, that if the railway company was negligent it was in failing to operate its car properly up to the time the pedestrian was discovered, etc., is *held* cured by an instruction.

9. The refusal of the trial court to give plaintiff's requested instruction on a point on which the jury was properly and fully instructed was not error.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

This action was brought by *Louisa Williams,* as administratrix of the estate of Louis Williams, to recover damages for the death of Louis Williams through alleged negligence of the *Duluth Street Railway Company.*

On and prior to March 13, 1917, Louis Williams, a resident of the city of Superior, was employed at a shipbuilding plant located on Rice's Point in the city of Duluth, Minnesota. The defendant owned and operated a double-track street railway on Garfield avenue in the city of Duluth, which line was the connecting line between the cities of Superior and Duluth. Garfield avenue runs north and south; the cars going to Superior run south on the west track. The Bay of Superior lies to the east of Garfield avenue, and the shipyard at which deceased was employed is located on the water front about 1,000 feet from the bottom of the approach of a viaduct built at the north end of Garfield avenue over a number of railroad tracks, with an approach leading down to the level of Garfield avenue proper.

A severe blizzard was raging in the cities of Duluth and Superior on March 13, 1917, the day Williams was killed. Williams left the shipyard at 4:30 o'clock in the afternoon and walked to Garfield avenue for the purpose of taking a street car to his home in Superior. In order to take the car it was necessary for him to cross both the street railway tracks. While crossing the west or south-bound track he was struck by a street car, causing injuries of which he died March 22, 1917. The plaintiff alleges that the street car

which struck Williams was going at a rate of thirty miles an hour; that the snow so filled the air that an object could not be seen more than twenty feet away; that the car was run negligently and carelessly, the motorman neglecting to ring the bell or sound the gong on the car; and that no precaution was taken by the defendant to avoid or prevent injury to deceased or to give him warning of the danger in which he was placed.

The defendant denies that the accident occurred through any negligence on its part, but alleges that the accident was caused by the negligence of the deceased.

The case was tried before the court and a jury. In a special verdict the jury found that Louis Williams was fatally injured by a collision with one of the defendant's street cars; that the motorman did not fail to exercise ordinary care in the operation of the street car; that Louis Williams was guilty of want of ordinary care proximately contributing to produce his injury.

The plaintiff's motion to set aside the verdict and grant a new trial was denied and judgment was entered dismissing the complaint on its merits and awarding the defendant its costs and disbursements. Appeal is taken from this judgment.

For the appellant there was a brief by *Hanitch & Hartley* of Superior, and oral argument by *Louis Hanitch* and *Clarence J. Hartley*.

*C. R. Fridley* of Superior, for the respondent.

SIEBECKER, J. It is contended that the court erred in refusing to grant plaintiff a new trial. The jury found that the motorman was not guilty of actionable negligence in the operation of the car which collided with the decedent, Louis Williams. The evidence adduced on this point justified the conclusion that the car was being operated at a speed from eight to ten miles per hour; that the gong and whistle signals were given as it proceeded down the viaduct of Garfield ave-

nue; that the brakes were applied and were in operation; that the motorman kept a lookout for pedestrians; that he could see persons from twenty-five to thirty feet from the car; that Williams was running and attempting to cross the street-car tracks in front of the car; that the motorman immediately, when he saw Williams, put on the reverse, but that he could not stop the car before it collided with Williams and injured him.    In the light of these facts, the condition of the tracks, the decline of the street over the viaduct, and the weather, it is clear that it cannot be said that the verdict is not supported by the evidence.    The plaintiff contends that the court prejudicially erred in its denial of a motion to grant a new trial upon the following grounds:

(1) It is urged that the exclusion of the evidence offered to show that the conductor, within a few minutes after the collision, stated in effect that since everything needful had been done for Williams, that "in order to keep the car on time" those wishing to go to Superior might as well start, was prejudicial error because this statement significantly tended to show that the car was being run at a high speed under adverse weather conditions.    This ruling was not prejudicial upon the ground that the evidence has no probative effect on the point suggested.

(2) The witness Rohow, when testifying to the speed of the car, stated: "the motorman used very good judgment, in my opinion."    Plaintiff's counsel moved this be stricken and that the witness be admonished to state only facts.    The court addressed the witness: "Give the facts and not your conclusions," but did not direct the objectionable part to be stricken out.    Though the witness's opinion was improper, the omission to have it expunged cannot be treated as prejudicial error, since the court conveyed to the jury the idea that facts only and not conclusions were to be treated as evidence in the case.    This witness also testified on direct examination that the collision was almost instantaneous with the

sounding of the whistle. Defendant's counsel thereupon inquired whether he made a statement of the occurrence after the accident. The witness answered affirmatively and then this question was propounded: "Do you remember that in that statement you said the whistle was blowing about half a car length before you struck him?" Objection was made to the question upon the ground that it was in the nature of cross-examining the witness. The court declared that the witness's memory could be refreshed properly in this way and that the witness might inspect a memorandum for that purpose, but no memorandum was submitted to or used by the witness. Plaintiff's counsel insisted on its production for his inspection. This request was refused. It is apparent that the right of the cross-examiner to inspect and use a memorandum to test a witness's credibility and the fact that the witness's memory could not be refreshed has no application to the situation here. Mere reference to a memorandum by counsel does not require its production so long as the witness does not use it to enable him to testify.

(3) Plaintiff requested that the following inquiry be submitted in the special verdict, which the court refused: "Did the defendant, at and prior to the time Louis Williams was struck, exercise ordinary care in the operation of the street car?" The following question was submitted: "Did the motorman, prior to the collision with said Williams, fail to exercise ordinary care in the operation of the street car?" It is urged that the question propounded by the court did not include the issue as to defendant's alleged negligence, because it omitted to include the duty of defendant to promulgate rules for the proper conduct of its business under weather conditions as they existed on the day of the accident. The argument is made that the usual mode of running the street cars is not reasonable care for conducting the business under the adverse weather conditions that existed on the day in question, and hence the defendant should have in-

structed employees by promulgation of rules how to operate the cars in bad weather. In discharging its duties and obligations to persons other than its agents, servants, and employees, the defendant must act through its agents, servants, and employees, and their acts are the acts of the company, and so in the instant case the motorman was the representative of the defendant in the running of the car which collided with Williams; his acts are its acts for the purposes of this case, and his acts can be the only basis on which to predicate negligence. Defendant might promulgate innumerable rules for the instruction of its servants how to run its cars in the variant conditions of weather, yet such rules could in no way control on an inquiry whether or not the defendant was guilty of running its cars in a negligent manner as regards persons not in its employ. It is manifest that omission to promulgate such rules has no bearing on defendant's legal responsibility for the alleged negligence in the accident to Williams.

(4) It is urged that the court's remarks in presence of the jury to the effect that if defendant were negligent it was in failing to operate the car properly up to the time Williams was discovered and probably the evidence did not show negligence after the motorman discovered Williams because no one claimed that the car could have been stopped in less than 125 feet, were improper. This observation was made in response to the argument of plaintiff's counsel in summing up the case to the jury, that if speed had been slackened Williams would not have been struck. The evidence tends to show that the motorman had the air on the car when he discovered Williams; that he immediately released the air, reversed and put sand on the rail to stop the car, and that this is an efficient way of stopping quickly. The court instructed the jury that it was the motorman's duty, when he saw Williams, to use all reasonable care to avoid colliding with Williams, but that if a sudden emergency arose without his negligence and there were different ways for him to

adopt in order to avoid colliding with Williams, he was not negligent if he selected a course which may not have been the best.   This instruction states the proposition involved in the court's remarks and applied the correct principle to the evidence.   Any misleading remarks of the court were thus effectively corrected by this instruction.

The jury was properly and fully instructed on this issue of defendant's negligence, and hence the refusal of the court to give plaintiff's requested instruction on this point was not error.

We find no prejudicial error in the record affecting the verdict as to defendant's negligence.   The defendant not being negligent, it follows that plaintiff has no cause of action against the defendant.   This state of the case renders it unnecessary to discuss the other question presented by the appellant.

*By the Court.*—The judgment appealed from is affirmed.